HOUGHTALING and others *vs.* HOUGHTALING.

Where, in an action of trespass *quare clausum fregit*, the plaintiff complains not only of injury done to his land, but that his dwelling house was also destroyed, and the cause is tried upon a plea of title, and there is a verdict against the defendants, the plaintiff cannot, on a writ of error, insist that the dwelling house was personal property, and that trespass would lie against the defendants, for its destruction.

In such case the gist of the action is the injury to the land; the additional allegation that the plaintiff's dwelling house was destroyed, being merely matter of aggravation. And unless the evidence sustains the charge of injury to the land, the plaintiff is not entitled to recover.

In a cause commenced in a justice's court, and removed to the common pleas, by plea of title to land, the plaintiff's proof must be confined to his declaration.

A parol licence to do an act upon the land of another, which act may affect the owner in the exclusive use of his land, is creating an interest in the land, and is therefore within the statute of frauds, and void.

ERROR to the Onondaga common pleas. The action was trespass, originally commenced before a justice of the peace, but was discontinued there, in consequence of the defendants' pleading not guilty, and giving notice of title to the land in question. The cause was thereupon removed to the common pleas, and the plaintiff declared in trespass *quare clausum fregit*, for breaking and entering a certain close and dwelling house of the plaintiff situate in the town of La Fayette. The defendants pleaded the general issue, and gave notice that the *locus in quo*, with the appurtenances, was, at the time when, &c. the soil and freehold of the defendant Jane Houghtaling, and that the said dwelling house was attached to and was a permaennt fixture upon said close and freehold, and formed a part thereof; and that the said dwelling house was the property of the said Jane, and was, together with said close, in her possession at the said time when, &c. And that she broke and entered the said close and dwelling as her own house and property, as she lawfully might for the cause aforesaid; and that the other defendants, James, John, and Stephen Houghtaling

Houghtaling *v*. Houghtaling.

by her command and as her servants, did the acts whereof the plaintiff in his declaration had complained; as they lawfully might.   On the trial it was proved that the house was built by the plaintiff; that the defendant Jane Houghtaling was in the possession of the farm on which the house stood, when the building was torn down, and that the other defendants were her sons.   That John Houghtaling deceased was the husband of the said Jane and the father of the other defendants, and of the plaintiff Henry Houghtaling; and that he occupied the farm at the time of his death.   It was also proved by the plaintiff that the dwelling house was torn down by the defendants, John, James, and Stephen Houghtaling, in the presence and by the direction of their mother.   The counsel for the defendant offered and read in evidence the record of a deed executed by Joshua Forman to John Houghtaling, on the 12th of May, 1807, embracing the land on which the house stood.   He also offered in evidence, proceedings had before the first judge of Onondaga county in 1841, on the application of Jane Houghtaling, to remove James Alcott as her tenant, from the premises. But the evidence was objected to, by the plaintiffs' counsel, and the objection was sustained.   The will of John Houghtaling was then read in evidence.   By this will, the testator devised and bequeathed all his real and personal estate to his wife Jane, during her life, or until she should marry, and then to his children in equal shares.   The will was dated June 12th, 1840, and the testator died a few days afterwards.   The counsel for the plaintiff offered to prove the declarations of the said John Houghtaling deceased, made in his lifetime, that he gave the plaintiff license to build the house, and occupy it until he got ready to move it off.   This evidence was objected to, on the ground that the declarations of the said John were inadmissible to prove title in the plaintiff, to the house in question; and that a parol license to erect said house, with the privilege of taking it away, was void.   The court overruled the objection, and permitted the evidence to be given, and the defendants' counsel excepted.   The witness then testified that on the day the house was put up, John Houghtaling told him he had given

Henry (the plaintiff) a right to build a house there, and occupy it as long as he had a mind to. He told another witness, after the house was built, and while Alcott was in possession of it, that Alcott paid him no rent; as the house belonged to the plaintiff. Joel Houghtaling, a brother of the plaintiff, testified that he heard the agreement between his father and the plaintiff; that the plaintiff had taken his father's saw mill to tend, and had no house to live in; that he asked his father if he might build the house there; who told him he might, and went on and helped him build it; that it was built for the use of the mill, and when the plaintiff left the mill, the house was to be his father's. Alcott testified that while he occupied the house, he paid rent to the plaintiff; that he never paid any rent to the plaintiff's father. The court charged the jury that a parol license to erect a house on another man's land, acted upon, was good; and that if the facts in this cause supported that view of the case, the license would not be void, but would be good; that if the jury believed the plaintiff had an indefinite license to erect and occupy said house, then he had a right to the possession of the premises; and if he was in the actual possession thereof at the time the house was torn down, he could sustain an action against those who failed to show a better right. The counsel for the defendants excepted to this charge. The jury found a verdict for the plaintiff for $25; and judgment was rendered by the common pleas for that amount.

*D. Gott*, for the plaintiffs in error.

*H. P. Winsor*, for the defendant in error.

*By the Court*, PRATT, P. J. This was an action commenced in a justice's court and removed from that court to the court of common pleas by plea of title to land. The declaration in the court below was trespass *quare clausum fregit*; and a plea of title having been put in by the defendants, the cause was tried upon that issue. It is now insisted on the part of the plaintiff below that the house was personal property, and that trespass would lie against the defendants for its destruction.

Perhaps the evidence was sufficient to establish that fact; but that was not the issue to be tried in the court below. The plaintiff complained of injury to his land; and the additional allegation that his personal property was destroyed was merely matter of aggravation. The gist of the action was the injury to the land; and unless the evidence sustained that allegation the plaintiff was not entitled to recover. (*Howe* v. *Wilson,* 1 *Denio,* 181. *Rickets* v. *Solway,* 2 *Barn. & Ald.* 363. 1 *H. Black.* 555. 4 *Pick.* 239?)

In a cause commenced in a justice's court and removed to the common pleas by plea of title to land, the plaintiff's proof should be confined to his declaration. If the plaintiff should be allowed to abandon his allegation of injury to land, and try an issue of injury to personal property, the defendant would lose his costs, although he should succeed in obtaining a verdict; or if the plaintiff should succeed, he would get the benefit of the defendant's bond, although if he had counted on such injury in the first instance the plea of title would not have been interposed, and no bond would have been necessary. We think the verdict cannot be sustained upon that ground.

The main question then is, whether the plaintiff below proved such an interest in the land as would enable him to maintain trespass against the general owner of the fee. This depends upon the question whether a parol license to build upon the land of another, and to occupy it indefinitely, is revocable. And upon this also depends the question whether the court erred in admitting the declarations of John Houghtaling, made in his lifetime. The admissions of a former owner of land in possession are good against those claiming under him only to prove facts which may be established by parol. If a parol license to build upon and occupy the land of another is, when executed, irrevocable, there is no reason why it may not be proved by parol admissions, or any other parol evidence; but when a title cannot be created by parol, parol admissions of the existence of such title are not admissible.

To return, then, to the main question. Upon examining the statute of frauds, (2 *R. S.* 151,) there does not seem to be room

for a doubt that a parol license to build upon, and occupy, the land of another indefinitely, is absolutely void and confers no title whatever. Any other construction of the statute would render it nugatory. The grand remedial benefit derived therefrom, to wit, the prevention of frauds and perjuries, would be lost. In the case under consideration, without questioning the credibility of the witnesses, we cannot fail to see how easily, by a slight change of the language of the ancestor, a permission to erect a temporary house, for a temporary purpose, might be converted into a license to build and occupy indefinitely, and thus create an estate scarcely less than a fee. Yet, as plain as the language of the statute is, that no estate in land can be created by parol, there are cases both in England and this country which seem to favor a contrary doctrine.

We may pass by those cases cited by the plaintiffs' counsel which hold that a license to do a particular act, or a series of acts, upon the land of another, without creating or affecting the interest in the land itself—such as a license to hunt—may be good by parol; (*Taylor* v. *Waters,* 7 *Taunt.* 374; 15 *Wend.* 392,) and also those cases which hold that a license to do an act on one's own land, which may affect injuriously the air or light of another, cannot, when executed, be revoked; at least without the payment of all expenses. (*Webb* v. *Paternoster, Palmer,* 71. *Winter* v. *Brockwell,* 8 *East,* 308. 4 *Serg. & Rawle,* 241. 7 *Bing.* 682.) There are some peculiar circumstances in these cases which may well control the decisions of the courts. But there are other cases which go much farther, and hold doctrines in the teeth of the statute; such as *Wood* v. *Lake,* (*Sayre,* 3,) where it was held that a parol license to stack coals on the land of another, for seven years, did not create an interest in the land, and was therefore valid; or *Ricker* v. *Kelly,* (*Greenl. R.* 117,) where it was held that a license to build a bridge on another's land was good; or *Clement* v. *Durgin,* (5 *Greenl.* 9, 13,) where the same was held in relation to building a dam. (*See also* 7 *Taunt.* 374; 4 *Mees. & Welsb.* 538; 1 *How.* 405.)

But these cases are excrescences upon the law, and are com-

pletely repudiated, both in England and in this state. Sugden and Chitty both review all the cases with great ability, and show clearly that they are in direct opposition to the statute of frauds. (1 *Sugden on Vendors,* 91. 1 *Chitty's Gen. Practice,* 336 *to* 340. *See also* 4 *East,* 108 ; 5 *B. & C.* 221 ; 8 *Id.* 288 ; 11 *Mass. Rep.* 536 ; 3 *Kent's Com.* 451 ; *Miller* v. *Auburn & Syracuse R. R. Company,* 6 *Hill,* 62 ; *Mumford* v. *Whitney,* 15 *Wend.* 380 ; *Luce* v. *Carley,* 24 *Id.* 451 ; 10 *Conn. Rep.* 375.) These authorities establish the rule in accordance with common sense and right reason. They hold that a parol license to do an act upon the land of another, which may affect that other in the exclusive use of his land, is creating an interest in the land, and is therefore within the statute of frauds and void.

But were we, in this case, to adopt the contrary position, and hold that it did not create an interest in the land, the plaintiff would still fail on the first ground ; for, in that case, he would have no interest or title to be trespassed upon, and an action for breaking his close cannot be sustained. He has taken issue with the defendants upon his title to the land, and if he should succeed in showing that a license to build and occupy indefinitely did not create an interest in the land, he overthrows the foundation of his own action.

It is said that, at all events, the plaintiff was a tenant at will, and could not be put out of possession until a month's notice to quit had been given. How this might have been had the plaintiff continued in possession it is not necessary to decide. By the proceedings before Judge Lawrence, had they been admitted in evidence, the defendants might have shown that the defendant Jane had actually obtained possession ; in fact that did appear by the evidence, and it was not necessary to give the plaintiff, when he was actually out of possession, notice not to enter. Again ; the proceedings before Judge Lawrence were proper evidence to show an actual revocation of the license, and should therefore have been admitted.

The judgment of the common pleas must be reversed, and a venire *de novo* be awarded.