### J. H. HEIRONIMUS v. E. M. DUNCAN.

#### No. 934.

**1.   Trespass Upon Realty—Possession of Trespasser.**

Plaintiff sued for damages for forcible entry upon premises of which she was in possession, and injury to crops thereon.   She was herself a trespasser, having put an enclosed field in cultivation without authority from any one, and defendant had afterward leased the land from the owner.   Held, that the court was warranted in charging that a forcible entry is an entry by any one on the premises without the consent of the person having the actual possession.

**2.   Same.**

The premises consisted of two inclosures, a field and an adjoining pasture. Held, that plaintiff's possession of the field by the cultivation of a crop therein did not constitute a possession of the pasture as against the lessee of the owner.

**3.   Same—Duty as to Fencing.**

Defendant put cattle into the pasture, notifying plaintiff, whose crops were injured by the cattle crossing the fence separating the pasture from the field. Held, that recovery could not be had for such injury if plaintiff had failed to repair the fence so as to make it a lawful fence.

APPEAL from Grayson.   Tried below before Hon. DON A. BLISS.

*C. B. Randell* and *Wolfe & Hare,* for appellant.—1.   The court erred in refusing the special instruction requested by defendant to the effect that Frank Fields was the owner of the land, and that J. H. Heironimus was his tenant, and that the said J. H. Heironimus was entitled to the

possession of the land, and that if the jury should find that the plaintiff entered upon said land without and right to the same to find for the defendant.

2. The court erred in refusing defendant's special instruction to the effect that unless the jury believed from the evidence that the plaintiff or some one representing her was actually on the premises at the time defendant entered upon the same, they should find for defendant. Bonner v. Wiggins, 52 Texas, 125; Cooley on Torts, 379-385.

No brief for appellee reached the Reporter.

LIGHTFOOT, CHIEF JUSTICE.—The appellee in this case has filed no brief, and we have not had the benefit of a discussion of that side of the case, or a presentation of the facts, except as they appear in appellant's brief. In the absence of objection, we adopt appellant's statement, as follows:

Appellee filed this suit in the District Court of Grayson County, July 28, 1892, against J. H. Heironimus, appellant, alleging that on about June 29, 1892, and prior thereto, appellee was in the quiet, peaceable and actual possession of certain premises situated in Grayson County, being a part of the Orlando Willis survey, and that appellant, without lawful authority or any right whatever, forcibly, willfully and wantonly broke into and entered upon said premises, and did turn in and drive upon said premises certain cattle belonging to and under the control of appellant. That appellee had her growing crops, which she had cultivated and sown, on said. premises, and that appellant came with force and arms, loaded Winchesters, threats, and guns, and intimidated appellee, who was a widow, and turned said cattle upon said premises, and by threats and display of arms prevented appellee from turning said stock off said premises. That said stock so forcibly and willfully turned upon said premises destroyed said crops, destroyed and trampled down 500 acres of grass belonging to appellee; that the value of the grass so destroyed was the sum of $700; that said cattle, in addition to the destruction of said grass, also tore down and trampled upon 60 acres of corn belonging to appellee, which was of the value of $750. That said cattle also destroyed, ate up and trampled down 17 acres of oats, which was the property of appellee, which was of the value of $500. That by reason of the willful, wanton and threatening acts of appellant, she suffered actual damage in the sum of $1950. Appellee further claimed that on account of the willful, wanton, forcible and outrageous acts of appellant, and by reason of the force, threats, intimidation and gross persecution of appellee by appellant, she was entitled to recover as exemplary damages the sum of $5000, for all of which she asked judgment.

Appellant, after obtaining leave of the court, March 30, 1893, filed his first amended original answer, consisting of general and special exceptions and general denial, and special answer which alleged that appellee had no right to the possession of the premises described in her

petition; that she was a trespasser on said land, without any right either to the land or the possession thereof; that said property was owned by one Frank Fields, a citizen of Dallas County, Texas; that appellee had without authority either from said owner or any one by him authorized, entered upon said premises forcibly and unlawfully; that appellant had obtained and leased said premises from said owner, through his duly authorized agent, S. D. Steadman, of Grayson County, and was entitled to the possession of the same, and that he used no force to get possession of said premises and exercised no more force than was reasonable and necessary for the defense of his rights. There was a judgment below for appellee, from which this appeal was taken.

It appears from the evidence, as stated in appellant's brief, that the land upon which it is claimed that appellant trespassed was not owned by either appellant or appellee; that appellee did not claim to be the owner, but took possession of a portion of it and planted a crop thereon, without permission from any one, and was, in fact, a trespasser; and that appellant rented the property from Frank Fields, who was the rightful owner and entitled to the possession. Appellee had a crop cultivated on the land, but did not live upon it, and lived upon her own land on another tract. The place is divided into two enclosures, and in one of these, embracing about 100 acres, was the cultivated land, while in the other, about 300 acres, was a pasture. Appellant, after leasing the place from the owner, took quiet and peaceable possession of the pasture, and turned his cattle upon it. Appellee was notified that the cattle were placed in the pasture, and that she must protect her crops by a lawful fence. The fencing was repaired between the pasture and the field by appellant, but the cattle got into the field at a place in the fence where there was a washout, and appellee's crop was injured.

The second assignment of error is as follows: "The court erred in the fourth paragraph of its charge to the jury, wherein the jury are instructed that a forcible entry is an entry by any one upon the premises, without the consent of the person having the actual possession, and because said instruction was misleading under the facts of this case."

As a general rule, it does not matter, in so far as the rightful owner is concerned (and appellant, holding as lessee of the owner, must be considered as the rightful owner), whether he obtained the consent of a trespasser to enter or not. A trespasser has only the actual possession to rely upon, and if the owner can regain actual possession without using force, even though he does not obtain the consent of the trespasser to do so, such entry cannot be forcible where it was peaceably obtained, and no action would lie against the owner therefor.

The old English rule is thus stated by Mr. Addison in his work on Torts, section 383: "At common law, if a man had a right to the possession of land, and a right to enter thereon, he might enter and obtain possession with force and arms, and retain possession by force, which gave an opportunity, we are told, to powerful men to enter upon land under pretense of feigned titles, and forcibly eject their weaker

brethren, and therefore, it was enacted, 'that none thenceforth make entry into any lands and tenements but in cases where entry is given by the law, and in that case not with strong hand, nor with multitude of people, but only in a peaceable and easy manner.' A mere trespasser can not, by very act of trespass, immediately, and without acquiescence on the part of the landowner, become possessed of the land upon which he has trespassed, and which he tortiously holds, and he may consequently be expelled by main force; but if he is allowed to continue on the land, and the landowner sleeps upon his rights and makes no effort to remove him, he will gain a possession, wrongful though it may be, and can not be forcibly ejected. * * * The rightful owner can not, in any case, when he has a right of entry, whether legal or equitable, be made responsible in damages for a trespass upon his own land, for he is no trespasser if he has a right to go upon it; but if he assaults and expels persons who, having originally come into possession lawfully, continue to hold unlawfully, after their title to occupy has been determined, he may be made responsible for the assault, and be indicted for a forcible entry, but he can not be made responsible in damages for the expulsion. Having a right to enter upon his own land, he may do so peaceably; and if his entry is resisted by force, he may, it seems, repel force by force."

This rule has been somewhat modified by our statutes and the decisions under them, but we know of no case which has gone to the extent of holding that the rightful owner, when he can gain peaceable possession of his property, must obtain the consent of the person not in the actual possession before he can enter. In the case of Bonner v. Wiggins, 52 Texas, 128, our Supreme Court says: "As against a mere trespasser, possession is sufficient title to support an action. Linard v. Crossland, 10 Texas, 464. But as against the rightful owner, a wrongful possession gives no cause of action for entering and resuming possession, unless done with force and a strong hand." 1 Greenl. Ev., section 618; 3 Black. Ch., 12; 1 Add. Torts, sections 383, 446; 1 Chitty's Pl., 177; Sampson v. Henry, 13 Pick., 36; Harris v. Gillingham, 6 N. H., 9; Wentz v. Fincher, 12 Iredell, 297; Houghtaling v. Houghtaling, 5 Barb., 379."

The charge of the court complained of in this assignment was in the language of article 2441, Revised Statutes, defining what would be a forcible entry within the meaning of the forcible entry and detainer statute, but in this case it does not appear that appellee had actual possession of the pasture. Even if it should be conceded that appellee, by reason of having a crop on the cultivated land, had the actual possession of that part of the place, though she lived elsewhere, when the appellant peaceably took possession of the pasture, having the right to such possession, no damage could have accrued to appellee by reason of that particular act, and no damage is shown. If the native grass was trodden down or eaten, it was apppellant's own grass; it did not pertain to appellee's possessory rights, if any, and appellee was not entitled to damages

for its injury. Baker v. Cornelius, 6 Texas Civ. Apps., 28. The charge was a general definition of a forcible entry, and may have been applicable to the entry upon the cultivated land actually occupied by appellee, and in that view, we can not say that it was erroneous.

The sixth assignment is as follows: "The court erred in refusing the second special instruction requested by defendant, to the effect that if the jury should find that the plaintiff took possession of the land without any right; and if they further found that defendant entered upon the same peaceably and took possession of the grass lands, that under such circumstances the defendant would have had the right to said grass lands, and if plaintiff failed to protect her crops by lawful fences, they should find for defendant."

Even though appellant might have regained possession of the grass land peaceably, and no damage accrued to appellee by reason of that particular act, yet, if appellant invaded by force the land upon which appellee had her crops, and allowed his cattle to injure or destroy them, he would be liable for damages for such injury, even though he held under the rightful owner, and appellee was a mere trespasser.

Mr. Cooley in his work on Torts, page 323, says: "There are several reasons why the law can not suffer a forcible entry upon a peaceable possession, even though it be in the assertion of a valid title against a mere intruder. First. Whoever assumes to make such an entry makes himself judge in his own case, and enforces his own judgment. Second. He does this by the employment of force against a peaceable party. Third. As the other party must have an equal right to judge in his own cause, and to employ force in giving effect to his judgment, a breach of the public peace would be invited, and any wrong, if redressed at all, would be redressed at the cost of a public disturbance, and perhaps of serious bodily injury to the parties. The good of the State could not tolerate such proceedings, and therefore when forcible possession is taken, the law compels a restoration, and refuses to inquire into the title until it is made. But if one lawfully entitled to possession can make peaceable entry, even while another is in occupation, the entry, in contemplation of law, restores him to complete possession, and it is not unlawful for him to resort to such means, short of the employment of force, as will render further occupation by the other impracticable."

If we regard the entry upon the pasture lands as peaceable, still, the appellee held possession of the field in which her crops were planted, and could not be lawfully ejected by force, and her crops destroyed by the invasion of cattle. Baker v. Cornelius, supra; Sinclair v. Stanley, 64 Texas, 67; same case on second appeal, 69 Texas, 718. In the last named case, the owner was already in possession of a part of his land, but the trespasser who took possession of a small part of it and erected a cabin, was protected against actual force on the part of the owner.

It has been fully settled in this State that a party holding land as a mere trespasser, without any claim or color of title, where the real owner is in possession of a part of the land, can not extend his possessory

claim beyond the actual limits of his occupancy. The true owner may hold a large tract of land under a very small improvement, for the reason that his actual possession of a part carries with it the constructive possession of the whole, whereas, the trespasser having no title or color of title, must rely wholly upon his actual possession. Evitts v. Roth, 61 Texas, 85; Parker v. Baines, 59 Texas, 15; Cantagrel v. Van Lupen, 58 Texas, 570; Whitehead v. Foley, 28 Texas, 290; Lumber Co. v. Ballard, 23 S. W. Rep., 920.

Now if appellee was in possession of the field, and appellant, representing the actual owner, peaceably obtained possession of the pasture, such possession of appellant drew to it the constructive possession of the whole property not actually occupied by appellee. Claiborne v. Elkins, 79 Texas, 382; Wood on Lim., 543, 259. In such a condition of affairs, appellee certainly could not claim higher rights against appellant than would exist if they were adjoining property holders. If they were rightfully such adjoining property holders, it would be necessary for appellee, after receiving notice of the cattle being placed in the pasture, to put her fence in such repair as to make it a lawful fence, before she could hold her neighbor responsible in damages for the encroachments of the cattle. Revised Statutes, articles 2431-2434.

The special instruction in the language asked, was caluculated to mislead the jury; but it was sufficient to call the attention of the court to that point, and a charge should have been given upon the subject.

There are other questions presented in the brief of appellant, but the discussion of the foregoing assignments are deemed by us sufficient to present our views of the leading points involved.

For the errors above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 2, 1895.