

NUMBER 13-12-00212-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

JUAN HERNANDEZ,                                                          Appellant,

v.

YOLANDA HERNANDEZ,                                                       Appellee.

On appeal from the 197th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, Juan Hernandez ("Juan"), appeals from the trial court's "Order of Enforcement by Contempt (Property Division), Order Dividing Property, and Order Determining Interest Rate" ("Contempt Order") in favor of appellee, Yolanda Hernandez ("Yolanda"). We affirm.

## I. BACKGROUND

A final decree of divorce was entered by the trial court on October 8, 2008, and Juan appealed to this Court. *See Hernandez v. Hernandez*, 13-08-00722-CV, 2010 Tex. App. LEXIS 7991 (Tex. App.—Corpus Christi Sept. 30, 2010, pet. denied) (mem. op.). In the original appeal, Juan challenged the trial court's division of the community estate by arguing that the trial court erred in entering a finding that there was no evidence of community indebtedness. *Id.* at *1. We affirmed. *Id.*

On January 11, 2012, the trial court held an evidentiary hearing on Yolanda's "Petition for Enforcement of Property Division by Contempt and Petition for Post Divorce Division of Property." On February 29, 2012, the trial court entered the Contempt Order, which provided in relevant part:

> The Court finds that on August 8, 2008, [Juan] purchased real property [known as the "Portofino Lot"].
>
> The Court further finds that at the time [Juan] purchased the above-described real property, [Juan] and [Yolanda] were married.
>
> The Court further finds that the Final Decree provided that . . . "any undisclosed asset of the parties is awarded to the party not in possession or control of the asset."
>
> The Court further finds that on October 8, 2008, the Portofino Lot was an asset of [Juan], which . . . Juan did not disclose.
>
> The Court further finds that improvements constructed on the Portofino Lot were paid for by [Juan] with part of a loan in the original principal sum of $720,000.00 made to [Juan] by Falcon International Bank dated October 14, 2008.
>
> The Court further finds that [Juan] is guilty of fraud at the inception in acquiring the loan from Falcon International Bank.
>
> . . .

The Court finds that in the Final Decree of Divorce dated October 8, 2008, [Yolanda] was awarded judgment of $446,535.50 against [Juan] payable within ninety (90) days from the date of the Decree, with interest at five percent per year compounded from the date of judgment.

The Court finds that [Juan] was ordered to execute, have acknowledged, and delivered to [counsel for Yolanda] a Real Estate Lien Note and Deed of Trust to secure the judgment awarded to [Yolanda].

The Court further finds that on April 23, 2009, [Juan] executed a Real Estate Lien Note which provided that the sum of $446,535.50 plus interest at the rate of 5% per annum was due and payable on or before January 8, 2009. The Note further provided that interest on matured, unpaid amounts would accrue at the "highest rate allowed by applicable state and federal law."

The Court further finds that interest of eighteen percent (18%) per annum is within the highest interest rate allowed by applicable state and federal law.

The Court further finds that [Juan] did not pay any part of the judgment due to [Yolanda] on or before January 8, 2009.

IT IS THEREFORE ORDERED and DECREED that the judgment awarded to [Yolanda] bear interest at the rate of five percent (5%) per annum from October 9, 2008 to January 8, 2009 and at the rate of eighteen percent (18%) per annum from January 9, 2009 to date of payment.

This appeal ensued.

## II. ANALYSIS

In four issues, which we address as two, Juan argues that the evidence is legally and factually insufficient to support the trial court's findings that: (1) he is guilty of fraud at the inception in acquiring the loan from Falcon International Bank; and (2) the interest rate applicable to the judgment is eighteen percent (18%).

### A. Applicable Law

The Texas Family Code provides that community property consists of the property, other than the separate property, acquired by either spouse during marriage.

3

*See* TEX. FAM. CODE ANN. § 3.002 (West 2006); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). There is a presumption under the family code that property held during marriage is community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006). Only community property is subject to the trial court's division of the marital estate, and the trial court may not divest one party of his separate property. *Cameron v. Cameron*, 641 S.W.2d 210, 220 (Tex. 1982). In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the court "deems just and right." TEX. FAM. CODE ANN. § 7.001 (West 2006); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). Trial courts have wide discretion in making a just and right decision. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998).

The court that renders a divorce decree retains the power to enforce the property division. TEX. FAM. CODE ANN. § 9.002 (West 2006); *see Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011); *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding). Although a court is without authority to change provisions in a final judgment relating to property adjudication, it does have authority to make orders necessary to carry the judgment into full effect. TEX. FAM. CODE ANN. § 9.001 (West 2006). Family Code section 9.006, entitled "Enforcement of Division of Property," provides that "the court may render further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order." *Id.* § 9.006(a) (West 2006). The court also "may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed." *Id.* § 9.006(b); *see Dechon v. Dechon*, 909 S.W.2d 950, 956 (Tex. App.—El Paso 1995, no writ).

4

**B.  Standard of Review**

We consider a trial court's order of enforcement under an abuse of discretion standard.  *See Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.  *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

In family law cases, the traditional sufficiency standards of review overlap with the abuse-of-discretion standard of review; thus, legal and factual sufficiency are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion.  *Zorilla v. Wahid*, 83 S.W.3d 247, 252 (Tex. App.—Corpus Christi 2002, no pet.).

**C.  Finding of Fraud**

In his first and second issues, which we will address together, Juan challenges the legal and factual sufficiency of the evidence to support the trial court's finding that "[he] is guilty of fraud at the inception in acquiring the loan from Falcon International Bank."  Although Juan asserts that the trial court's finding of fraud was "erroneous," it is unclear how that contention, if established as true, would entitle Juan to the rendition of a take nothing judgment against Yolanda.  *See* TEX. R. APP. P. 44.1 (reversible error in civil case).

Juan contends that the trial court awarded Yolanda relief based on the finding that Juan acquired loan proceeds from Falcon International Bank on October 14, 2008, six days after the final Divorce Decree was entered on October 8, 2008.  Juan's argument is that, since he did not receive the loan proceeds until after the Divorce

5

Decree was entered, the loan proceeds were not community property for purposes of the Divorce Decree. According to Juan, the loan proceeds were therefore not subject to the provision of the Divorce Decree that provides that "any undisclosed asset of the parties is awarded to the party not in possession or control of the asset." Thus, Juan contends, the trial court's finding of fraud was erroneous and should be reversed and rendered in his favor.

Contrary to what Juan suggests in his argument, the trial court did not award the loan proceeds to Yolanda. Rather, the trial court found that, at the time Juan purchased the Portofino Lot, he and Yolanda were married. The trial court also found that Juan failed to disclose the Portofino Lot. Then, after citing the provision from the Divorce Decree providing that "any undisclosed asset of the parties is awarded to the party not in possession or control of the asset," the trial court awarded the Portofino Lot to Yolanda.

On appeal, Juan does not challenge the trial court's finding that the Portofino Lot was an asset in his possession or control at the time the Divorce Decree was entered. Nor does Juan challenge the trial court's finding that he failed to disclose the Portofino Lot. Finally, we note that Juan does not challenge the trial court's award of the Portofino Lot to Yolanda on the basis that he failed to disclose it.

What Juan has challenged with regard to the trial court's finding of fraud relates to the Portofino Lot only to the extent that the trial court found "that improvements constructed on the Portofino Lot were paid for by [Juan] with part of a loan in the original principal sum of $720,000.00 made to [Juan] by Falcon International Bank dated October 14, 2008." In this connection, Juan appears to concede that by awarding the

6

Portofino Lot to Yolanda, the trial court also implicitly awarded to Yolanda the improvements constructed thereon. Juan's fundamental complaint, then, is that the trial court erred in awarding Yolanda the improvements to the Portofino Lot.

Again, Juan does not challenge the award of the Portofino Lot itself. This is problematic, as Yolanda points out, because "[t]he general rule is that improvements become part of the land and belong to the landowner." *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 838 (Tex. App.—Austin 2004, no pet.); *see also Bonner v. Wiggins*, 52 Tex. 125, 128-29 (1879) ("The rightful owner of land is the owner of the improvements made thereon without his consent."). Thus, Juan is incorrect in his suggestion that the trial court's finding of fraud was the exclusive basis for its implicit award of the improvements to the Portofino Lot to Yolanda. Even assuming the evidence were insufficient to support the trial court's finding of fraud, Juan would still have to establish that the trial court abused its discretion by awarding the improvements to the Portofino Lot to Yolanda based on her status as the rightful owner of the Portofino Lot. *See Downer*, 701 S.W.2d at 241-42. Juan has not met that burden on appeal. Accordingly, Juan's first and second issues are overruled.

### D. Finding of Interest Rate

In his third and fourth issues, which we will address together, Juan challenges the legal and factual sufficiency of the evidence to support the trial court's finding that the interest rate applicable to the judgment is eighteen percent (18%). Juan concedes that the promissory note he signed provides for interest at the highest rate allowed by law. Juan complains that "[n]o numerical figure is included or suggested in the note[]"

and asserts that "[i]t is disingenuous for Yolanda . . . to come to court now and ask for the higher interest rate of 18%."

As Yolanda points out, Texas law permits the use of different rates of interest for periods before and after the maturity of a promissory note. *See* TEX. BUS. & COM. CODE ANN. § 3.112(b) (West 2002). Here, the note provided for a post-maturity rate at "the highest rate allowed by applicable state and federal law." Under section 303.009(a) of the Texas Finance Code, the highest allowed rate is 18% per annum, which is the rate set by the trial court. *See* TEX. FIN. CODE ANN. § 303.009(a) (West 2006). Juan has not demonstrated that federal law sets a lower maximum rate. Nor has Juan demonstrated that the trial court abused its discretion by adopting the maximum rate under Texas law. *See Downer*, 701 S.W.2d at 241-42. Accordingly, Juan's third and fourth issues are overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
16th day of August, 2012.

8